HAROLD SMITH, Plaintiff-Appellee, *v.* JOSEPH A. MARZOLF, Defendant-Appellant.

Third District   No. 77-253

Opinion filed April 26, 1978.—Rehearing denied May 31, 1978.

Horace W. Jordan, of Van Duzer, Gershon, Jordan & Petersen, of Chicago, for appellant.

Michael T. Reagan, of Hupp, Irion & Reagan, and Peter F. Ferracuti & Assoc., both of Ottawa, for appellee.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Plaintiff Harold Smith, a gasoline station operator, was severely injured when he was crushed between a truck he was servicing and a car driven by defendant Joseph A. Marzolf. Defendant appeals from an order setting aside a $75,000 settlement and also from a judgment for $130,000 entered in favor of plaintiff in the Circuit Court of La Salle County.

According to the record, defendant, a Roman Catholic priest, was traveling from his parish in Ivesdale, Illinois, to attend a retreat at Henry, Illinois, at about 11 a.m. on September 30, 1974, when he began to feel tired and uncomfortable. As he was driving along Route 51 in the village of Rutland, he saw a restaurant adjoining plaintiff's truck stop service station and turned into the station driveway. His car struck a guard rail, knocked down a sign, and crashed into the side of a semi-trailer truck which was stopped for gas. Plaintiff was filling the truck's gas tank at the time of impact, and he was caught between the truck and defendant's car. Defendant was unable to recall what happened during the interval after he started to turn into the station until he "woke up" sitting in the car after the collision.

Plaintiff suffered a concussion and his left leg was fractured and

severely lacerated. He was hospitalized for about 2½ weeks after the accident and was hospitalized again three months later with pain and swelling in the left leg. A blood clot was discovered in a deep vein, and his condition was diagnosed as thrombophlebitis. The treating physician stated that without a doubt the thrombophlebitis resulted from the accident and that it is a permanent condition. Plaintiff cannot walk, stand or sit without experiencing swelling and pain, and he is limited in his ability to squat, kneel, or bend his left leg at the knee. Consequently, he has not been able to seek employment since the accident.

Plaintiff filed a personal injury action against defendant, and his insurer, Aetna Life & Casualty Company, was allowed to intervene for the purpose of protecting its right to reimbursement for payments made to plaintiff under the basic and excess personal injury protection coverage contained in plaintiff's policy. The case was called for trial on April 2, 1976, without notice to Aetna, and the parties on that date negotiated a $75,000 settlement agreement. Under the agreement, plaintiff accepted $10,000 for his permanent injuries and agreed to dismiss count I of his complaint. Also, the complaint was amended to allow plaintiff's wife to file count II for loss of consortium which she agreed to dismiss upon receipt of $65,000 for her damages. Plaintiff also agreed to furnish a release from Aetna. Stipulations were entered providing that if within 30 days the agreed amounts were not paid and proper releases executed, then, upon motion of either party, the order of dismissal might be vacated and judgment entered in favor of plaintiff. In due course plaintiff filed a motion for judgment, alleging that defendant had refused to pay the $75,000 as agreed.

Aetna filed objections to the settlement claiming that its subrogation rights for past and future payments to plaintiff would be destroyed by the allocation of only $10,000 to plaintiff since $16,742 had already been paid to him and future payments up to the $50,000 limit of liability were likely.

At the hearing on plaintiff's motion and Aetna's objections, plaintiff and defendant agreed to amend the settlement agreement to allocate $17,000 to plaintiff and $58,000 to his wife. The trial court ruled in favor of Aetna by setting aside the settlement and vacating the dismissal. The court found that the $17,000-$58,000 allocation of the settlement proceeds was for the sole purpose of defeating Aetna's rights and amounted to a fraud on Aetna and a violation of plaintiff's fiduciary duties owed to Aetna.

At the beginning of the trial on the merits, plaintiff's wife dismissed her claim for loss of consortium. At the close of all the evidence, the trial court directed a verdict against defendant on the question of liability. The jury awarded plaintiff $130,000 damages, and this appeal followed.

Defendant first contends that the trial court exceeded its authority in setting aside the settlement when no one has disputed the fairness of the

$75,000 settlement. He argues that the attorneys were authorized to enter into the agreement; that defendant had no concern as to the allocation of the settlement proceeds; that he should be allowed to pay the $75,000 into the court with plaintiff and Aetna to settle the dispute as to allocation between themselves.

In the trial court both defendant and plaintiff opposed Aetna's efforts to upset the settlement, but on appeal, after the verdict is in, plaintiff joins with Aetna in defending the vacation of the settlement. We agree with Aetna and plaintiff that the order setting aside the settlement should be affirmed.

Aetna was granted leave to intervene under section 26.1 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 26.1), which provides for intervention as of right "(b) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant will or may be bound by an order or judgment in the action." Aetna's interest in this litigation is, of course, the protection of its subrogation rights under its insurance contract which provided that Aetna is subrogated to the rights of plaintiff to the extent of payments from Aetna to plaintiff and which also provided that plaintiff shall do nothing to prejudice such rights.

Another portion of the policy contains the following:

> "TRUST AGREEMENT. In the event of any payment under [personal injury protection] coverage: (a) [Aetna] is entitled to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of the injured person against any person or organization legally responsible for the bodily injury because of which such payment is made, to the extent the damages recovered include the amount of any payment so made. (b) the injured person holds in trust for the benefit of [Aetna] all rights of recovery which he has against such other person or organization because of any payment so made which is the subject of the claim made hereunder."

In the trial court plaintiff admitted that, under the settlement, Aetna's subrogation rights would be limited to the amount of plaintiff's recovery from defendant ($17,000), but that in the future Aetna would continue to be liable for $150 per week disability payments plus medical expenses up to the policy limits of $50,000. At the conclusion of the hearing, the experienced trial judge stated that he had no doubt that defendant was liable for plaintiff's injuries and no doubt that plaintiff was seriously and permanently injured. Under those circumstances, the judge described the $17,000 settlement as "absolutely ridiculous" and clearly a fraud upon Aetna's rights which are entitled to protection. We believe the evidence supported those findings, and the subsequent withdrawal prior

to trial of the loss of consortium count would also seem to bear out the trial court's conclusion.

In addition, this case represents the classic situation where a court should act to protect an intervenor's rights. As one writer has said:

> "[A]fter the insurer has intervened in an action by the insured against the wrongdoer, and has shown a monetary interest in the result thereof, the court will not permit a settlement between the insured and the wrongdoer to the detriment of the insurer, but will protect the rights of all parties." 44 Am. Jur. 2d *Insurance* §1843 (1969).

■■ Defendant cites *Zipf v. Allstate Insurance Co.* (1st Dist. 1977), 54 Ill. App. 3d 103, 369 N.E.2d 252, for the proposition that the trial court should have allowed the $75,000 settlement to stand and should have adjudicated the rights of Aetna and plaintiff as to that sum. In *Zipf* the permanently disabled insured brought suit against her insurer to recover $50,000 under the personal injury protection coverage of her policy after she had recovered $12,000 in a suit against the tortfeasor. Plaintiff's insurer had intervened in the tort action, claiming $7,600 as reimbursement under its policy, but the trial court had adjudicated the insurer's lien as amounting to $4,000. In the subsequent suit on the policy, the court held that the insurer's liability was not terminated by the prior tort judgment. Thus, in the tort action the insurer asked the court to determine the amount of reimbursement under its policy, and no appeal was taken from that adjudication. In the case at bar, the amount of Aetna's subrogation lien was not placed in issue by Aetna's petition; this factual distinction would indicate that *Zipf* should not be controlling here. *Zipf* does establish Aetna's future liability which, of course, supports Aetna's contention that plaintiff was trying to "have his cake and eat it too" when he allocated the settlement so as to recover duplicate benefits from Aetna and defendant.

In our opinion plaintiff breached his duties to Aetna when he agreed to allocate 77 percent of the settlement proceeds to his wife, thereby defeating Aetna's subrogation rights. The trial court did not abuse its discretion in setting aside the settlement and vacating the dismissal order.

■■ The second issue on appeal is whether the trial court erred in directing a verdict in favor of plaintiff on the issue of liability. Defendant's theory at trial was that he suffered an unforeseen illness causing him to black out so that an act of God was the proximate cause of plaintiff's injuries, not defendant's negligence. He now argues that there was sufficient evidence in support of his defense to require the issue to go to the jury for determination.

After carefully reviewing the record, we can find virtually no evidence in support of defendant's theory. Defendant's own testimony that he was

feeling uncomfortable and tired and that he doesn't remember the accident would not support an inference of an intervening act of God without more. This case meets the *Pedrick* test: viewing all of the evidence in the light most favorable to defendant, we believe that no verdict for defendant could ever stand. Accordingly, we hold that the trial court correctly directed a verdict in favor of plaintiff as to liability.

■■ Lastly defendant claims he was denied a fair trial on the issue of damages when in final argument, plaintiff's counsel asked the members of the jury to put themselves in plaintiff's place. A similar argument contributed to a reversal in *Brant v. Wabash R.R. Co.* (4th Dist. 1961), 31 Ill. App. 2d 337, 176 N.E.2d 13, where an objection to the improper exhortation was overruled. However, in the case before us the trial court sustained defendant's objection, and plaintiff's counsel corrected himself immediately. Under the circumstances, we cannot say that the final argument was so prejudicial as to deprive defendant of a fair trial.

For the reasons stated above, we affirm the judgment of the trial court of La Salle County.

Affirmed.

BARRY, P. J., and ALLOY, J., concur.