HAROLD SMITH *et al.*, Plaintiffs-Appellants and Cross-Appellees, *v.* JOSEPH A. MARZOLF, Defendant.—(AETNA LIFE & CASUALTY CO., Intervenor-Appellee and Cross-Appellant.)

Third District   No. 79-191

Opinion filed February 1, 1980.

John F. Vickers, of Peter F. Ferracuti & Associates, of Ottawa, for appellants.

Michael T. Reagan, of Hupp, Irion & Reagan, of Ottawa, for appellee.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Plaintiff Harold Smith had been injured in a September 1974 accident at his truck stop. He subsequently filed suit against Joseph Marzolf, the driver of the auto which had injured him. Aetna Life and Casualty (hereinafter Aetna) was Harold Smith's insurer and, subsequent to the accident, paid to him $38,931.31 in benefits under their personal injury policy. When Smith's action, in which they were intervenors, resulted in a jury verdict in favor of plaintiffs in the amount of $130,000, Aetna asserted its subrogation rights under its policy with Smith and petitioned the court to adjudicate their subrogation lien. The parties, Smith and Aetna, agreed that $38,931.31 had been paid out by Aetna to Smith. Aetna sought recovery of that amount from the judgment award. The Smiths petitioned to have that amount reduced by a sum, payable to them, as reimbursement for Aetna's proportionate share of the attorney fees and litigation expenses which the Smiths had incurred in prosecuting their claim. They claimed that such benefit was not just the amount of moneys actually expended by Aetna, the $38,931, but rather they asserted the benefit to Aetna was in the amount of their total possible exposure under the policy, being $58,900. Plaintiffs sought recovery of one-third of that figure as attorney fees and expenses.

The trial court, after a hearing on the petitions, found that the Smiths were entitled to reimbursement from Aetna, under the fund doctrine (*Baier v. State Farm Insurance Co.* (1977), 66 Ill. 2d 119, 361 N.E.2d 1100), based upon the benefit to Aetna, and it set that amount at $38,931. The court thus granted Aetna its subrogation claim, minus an equitable reimbursement to the Smiths for Aetna's proportionate share of fees and expenses incurred in the action.

Plaintiffs Harold and Grace Smith filed their appeal from the judgment, alleging that the court erred in not computing Aetna's share of the expenses and fees based upon the $58,900 figure. Aetna has filed a cross-appeal, arguing (1) that the court erred in applying the fund doctrine; (2) that equitable considerations ought to have prevented any

recovery from Aetna by the Smiths and (3) that a proper calculation of fees, services and damages to Aetna would have resulted in no fee being awarded.

Prior to 1974, Aetna had insured Smith in a personal injury policy, in effect on September 30, 1974, when Smith was severely injured in an accident at his truck stop service station. His injuries resulted from the negligent driving of Joseph Marzolf. Aetna, Smith's insurer, began making payments under its insurance policy to cover Smith's medical expenses. Smith then filed his personal injury action against Marzolf, and Aetna was allowed to intervene for the purpose of protecting its subrogation rights under the policy. Without notice to Aetna by the insured Smith, the case was called for trial on April 2, 1976, and the parties negotiated a $75,000 settlement. Under the settlement agreement, plaintiff accepted $10,000 for his permanent injuries and agreed to dismiss his action. Also, as part of the agreement, the complaint was amended to show Grace Smith's claim for loss of consortium, which claim was then to be settled in return for a $65,000 payment to her. Stipulations were also entered whereby plaintiff agreed to furnish a release by Aetna and also agreed that if the amounts and releases were not exchanged within 30 days, the judgment and order of dismissal would be vacated. Thereafter, plaintiffs filed a motion for judgment, alleging defendant Marzolf's refusal to pay the $75,000 agreed to by the parties.

Aetna, learning of the negotiated settlement between Smith and Marzolf, filed objections to the settlement, claiming that its subrogation rights for past and future payments would be destroyed by the allocation of only $10,000 to plaintiff Smith, since it had already paid over to him $16,000 and future payments, up to the policy limit, were likely. The trial court set aside the settlement and vacated the dismissal, finding that the allocation of the settlement between Smith and Marzolf was for the sole purpose of defeating Aetna's rights and that it amounted to a fraud upon Aetna and a violation of Smith's fiduciary duties to Aetna under the policy. Thereafter, as we have noted, plaintiffs' case was tried before a jury and the jury returned a verdict of $130,000.

Defendant Marzolf appealed from that decision and contended that the court exceeded its authority in vacating the negotiated settlement. (*Smith v. Marzolf* (1978), 59 Ill. App. 3d 635, 375 N.E.2d 995.) We affirmed. However, in pertinent part of our opinion in that case, we upheld the trial court's findings that the attempted settlement by Smith and his attorney was "absolutely ridiculous," in light of the facts and circumstances as to liability and damages, and that it was "clearly a fraud upon Aetna's rights." (59 Ill. App. 3d 635, 638.) We noted therein the fiduciary duties established by the trust agreement portion of the contract between Smith and Aetna. (59 Ill. App. 3d 635, 638.) Subsequently, in

October 1978, Aetna filed a petition seeking to enforce its subrogation lien under the contract. The parties agreed that $38,931.31 was the sum Aetna had paid out to Smith, and Aetna sought recovery of that amount and any interest previously paid on that amount by the tortfeasor in satisfying the $130,000 judgment.

In response to Aetna's subrogation claim, plaintiff-insured Smith petitioned the court to order Aetna to reimburse Smith for Aetna's proportionate share of the attorney fees and expenses for which the insured had become indebted. Smith petitioned that the proportionate share be based upon the $58,900 figure (Aetna's potential exposure under the contract) and not on the $38,931 actually paid out. The circuit court granted Aetna its subrogation claim, but it also applied the fund doctrine to find that Smith was entitled to reimbursement from Aetna for its proportionate share of the fees and expenses incurred by Smith. The court set a reasonable and proper fee at one-third of the amount recovered, plus a proportionate share of expenses.

The circuit court rejected Aetna's argument that the fund doctrine should not apply because it had given considerable help to plaintiff in the final resolution of the case and had thus contributed to the creation of the fund. The court also rejected Aetna's invocation of the "unclean hands" doctrine against Smith and his attorney. The trial court concluded that Aetna was entitled to its subrogation lien in the amount of $38,931.31. It also granted plaintiff Smith reimbursement from that amount, for Aetna's proportionate share of the fees and expenses incurred by Smith in obtaining the judgment award. It set the reimbursement, under the fund doctrine, at one-third of the $38,931.31. It rejected Smith's contention that the recovery of a proportionate share be based upon Aetna's potential exposure and held that it should be based upon the moneys actually received by the insurer. Both parties have appealed from the circuit court's decisions and judgment.

We turn initially to the issues raised in the cross-appeal by Aetna, since Aetna questions the propriety of any recovery by Smith against Aetna based upon the fund doctrine. Later we shall address the issues raised with respect to the amount of the recovery. Aetna argues that the circuit court erred in applying the fund doctrine in this case.

■■ The fund doctrine is an equitable doctrine which allows an attorney who performs services in creating a fund to be compensated out of the whole fund by all those who benefit from the creation of the fund. (*Baier v. State Farm Insurance Co.* (1977), 66 Ill. 2d 119, 361 N.E.2d 1100; *Maynard v. Parker* (1977), 54 Ill. App. 3d 141, 369 N.E.2d 352, *aff'd* (1979), 75 Ill. 2d 73.) *Baier* permitted recovery, under this doctrine, by an attorney from his client's insurer-subrogee where the attorney's services to his client-subrogor created a fund out of which the subrogee received

benefit. The same equitable considerations underlying the fund doctrine's application have been utilized by some courts in extending the doctrine to a situation wherein the subrogor sues for a proportionate share of fees already expended by him. (*Lemmer v. Karp* (1977), 56 Ill. App. 3d 190, 371 N.E.2d 655.) In that case the court stated:

> "In *Baier*, the court's decision was based on the 'fund doctrine,' where an attorney may recover for his services in the creation of a fund from all those who benefit from the fund. In our case, it is the plaintiff who has brought the action to recover the subrogee's proportionate share of attorneys' fees and expenses which plaintiff paid in full to his attorney for the creation of the fund and from which the subrogee received its subrogated share. Thus, plaintiff cannot assert the 'fund doctrine' because his attorney has already been compensated in full for his services out of the whole fund. In addition, plaintiff is unable to rely upon the 'fund doctrine' because its application in Illinois has been confined *only* to attorneys and not plaintiffs who have not been fully compensated for their services and expenses in creating the fund. *Baier*, 66 Ill. 2d 119, 124.
>
> This limited interpretation of the 'fund doctrine' does not preclude this court from applying the same equitable considerations contained therein to eliminate inequitable constraints upon the rights of the plaintiff. In our opinion, it promotes legal nepotism to allow recovery for the attorney from the subrogee when he has not been paid in full for his legal services in the creation of the fund and yet deny recovery based on the same equitable approach to his client who *has paid* his attorney in full out of the proceeds of the whole fund and has not been reimbursed by the subrogee for its proportionate share of legal fees and expenses in the creation of the fund. Such a legal result, in our opinion, flies in the face of equity." (56 Ill. App. 3d 190, 192-93.)

However termed, "fund doctrine" or "equitable apportionment," the circuit court in the instant case concluded that plaintiff Smith was entitled to have Aetna pay a proportionate share of the fees and expenses he incurred in litigating the claim against Marzolf. In order to recover under the doctrine it is necessary for a plaintiff seeking recovery from a subrogee to show (1) that the fund was created as a result of legal services performed by an attorney employed by him, (2) that the subrogee did not participate in the creation of the fund, and (3) that the subrogee benefited out of the fund that was created. (*Baier v. State Farm Insurance Co.* (1977), 66 Ill. 2d 119, 124.) When these conditions are shown to exist, then equity will apportion the fees and expenses incurred in creating the fund among those who benefit from its creation. In the instant case, the circuit

court correctly concluded that the conditions permitting an equitable apportionment had been satisfied. It was the attorney employed by plaintiff Smith who had prosecuted the personal injury action, and it was his efforts which had created the $130,000 judgment fund. We agree with the trial court that while Aetna was a party and did participate in the litigation, its sole participation throughout was limited to protecting its subrogation rights. In his opinion, the trial judge stated: "I do not agree that the energies expended by Aetna upon the controversy between Plaintiff and Aetna through this case actually contributed to create the fund involved. They were, at most, protective moves on Aetna's part to protect Aetna's lien. They did not aid in the creation of the fund." It is pertinent, as well, that this trial judge had presided over the entire litigation. As to the other condition requisite to an equitable apportionment, it is clear that Aetna benefited from the creation of the fund in that, as the court concluded, it may recover its subrogation lien out of the proceeds of that fund. We find no error in the court's application of equitable apportionment to the fees and expenses incurred by plaintiff Smith and beneficial to Aetna.

We do not conclude, as urged by Aetna to do, that the fund doctrine or its equitable analogue in Illinois required advance notice to Aetna that fees would be assessed against it if it did not join in the action against Marzolf. Such a notice requirement was set forth in *State Farm Mutual Automobile Insurance Co. v. Geline* (1970), 48 Wis. 2d 290, 179 N.W.2d 815, but it was not adopted by the Illinois Supreme Court in *Baier*. We note also that the *Geline* court applied the notice requirement prospectively. In the instant case, moreover, it is difficult to discern what effect, if any, such notice would have had, given that Aetna was already a party to the litigation, albeit only to protect its lien. There is no showing that Aetna attempted to join actively in the litigation against Marzolf. In its petition to intervene it did not seek "to be an active participant, but only to protect subrogation and lien interests." For these reasons, we decline, in this case, to hold that the court erred in applying equitable apportionment because of a lack of notice to the subrogee that Smith intended to charge it with a share of his fees and expenses. By such decision, we do not foreclose reexamining that question in an appropriate case.

A second issue raised by Aetna is whether the trial court abused its discretion when it refused to invoke the doctrine of "clean hands" to bar any recovery by Smith from Aetna. This doctrine acts to prevent a party who has been guilty of misconduct from recovery, in a court of equity, from the party against whom the misconduct was directed. It is an outgrowth of the equitable maxim that "he who seeks equity must do equity." For the doctrine to apply, the misconduct must have been in

connection with the very transaction being considered, and it must have been misconduct against the person from whom recovery is sought in equity. (*Mascenic v. Anderson* (1977), 53 Ill. App. 3d 971, 369 N.E.2d 172; *Metcalf v. Altenritter* (1977), 53 Ill. App. 3d 904, 369 N.E.2d 498.) As emphasized in *Mascenic v. Anderson*, however:

> "The 'clean hands' doctrine is not a judicial straightjacket, is not favored by the courts, is not intended to prevent equity from doing complete justice, and its application is a matter for the sound discretion of the trial court. See *Shadden v. Zimmerlee* (1948), 401 Ill. 118, 127-28, 81 N.E.2d 477, 482." *Mascenic v. Anderson* (1977), 53 Ill. App. 3d 971, 972.

■■ Aetna argues for application of the clean hands doctrine because of the misconduct by counsel for plaintiff Smith in seeking the $75,000 settlement that was vacated by the trial court. As noted previously, this court affirmed the trial court's findings, with regard to the vacation of judgment, that the settlement contrived by counsel for Smith was made for the sole purpose of defeating Aetna's subrogation rights and that it constituted a fraud upon Aetna and a breach of fiduciary duties imposed by virtue of the contract of insurance. Given this misconduct, we would have little hesitance in affirming the trial court, had it chosen to apply the clean hands doctrine against Smith to prevent recovery by him from Aetna. However, the trial judge did not do so. Rather, he held that the doctrine did not bar an equitable recovery by Smith from Aetna. We note that the trial judge who made this decision was the same judge who had presided over the earlier aspects of the case and had vacated the first judgment because of the misconduct referred to. The trial court was in the best position to assess the overall equities involved in the claim for an equitable apportionment. It may well have been his conclusion that the previous misconduct was largely the action of counsel for Harold Smith and not that of Smith himself. In summary, given the unfavored position of the clean hands doctrine, the nature and origin of the previous misconduct in this case, the equities among the parties, and the intimate knowledge of the litigation possessed by the trial court, we cannot say that the court abused its discretion in granting relief to Smith. We would strongly note, however, that we do not perceive in the trial court's decision any condonation of the previous misconduct. Had it been that attorney seeking fees on his own behalf, under the strict confines of the fund doctrine, the trial court's decisions may well have been different.

■■ Having found that the trial court did not err in concluding that Smith was entitled to a reimbursement from Aetna for a proportionate share of the fees and expenses he had incurred, we turn now to the issues raised by the parties concerning the proper amount of that reimbursement. Under

the fund doctrine, the person responsible for the creation of the fund is entitled to recovery against a subrogee benefiting from the fund "in proportion to the benefit received by the subrogee." (*Baier v. State Farm Insurance Co.* (1977), 66 Ill. 2d 119, 124.) The trial court found that a reasonable fee to be assessed against Aetna would be the standard personal injury fee of one-third of the recovery, which was also the fee charged Smith by his attorney. Accordingly, the court held that Smith was entitled to reimbursement from Aetna in the amount of one-third of the recovery it received under its subrogation claim, being one-third of $38,931.31 plus any interest thereon owing to Aetna.

Aetna argues that the only benefit to it resulting solely from the services of Smith's attorney was the $10,000 figure it would have received under the previously attempted fraudulent settlement. We cannot agree. We have already concluded that Aetna's participation in the litigation was directed solely towards its own protection. It did not aid in the creation of the judgment fund ultimately recovered. Yet, it did, by virtue of the existence of that fund, recover its entire subrogation claim, being $38,931.31. The benefit conferred upon it by prosecution of the claim by Smith is, at least, that actual amount which it recovered by virtue of its subrogation rights. The benefit to it is $38,931.31 plus any interest due it on that figure. A secondary argument advanced by Aetna is that any reimbursement to Smith should be reduced by the "damages" Aetna has suffered as a result of the attempted fraud on the part of the plaintiff and his counsel. Such damages, according to Aetna, include funds it had to expend for fees and expenses in vacating the previous settlement judgment. It also claims that as a result of the delay occasioned by the previous settlement, it was required to pay considerable sums to Smith under the terms of the policy, which sums now act to increase Smith's recovery against it.

■■ Initially, it must again be emphasized that the trial court, having overseen the entire litigation, is in the best position to determine the amount of a reasonable fee. We find that the court's decision in the instant case falls within the allowable range and we will not overturn that decision. As to the claimed damages, some expense was incurred by Aetna in protecting itself from the first agreed-to settlement. However, that expense was but a part of the entire expense in seeing the litigation through trial and two appeals. We find no error in the trial court's refusal to view that expense as "damages" which ought to be deducted from any recovery by Smith. As to the increase in the amount required to be paid by Aetna to the insured while the litigation progressed, those payments were required under the contract of insurance, and were, for the most part, caused by defense appeals and not by delay occasioned by the attempted fraud. The court properly took no consideration of those payments as damages when it set a reasonable fee.

■■ Having now concluded all the issues raised by Aetna in their cross-appeal, we turn to the issue raised by Smith on his appeal. Smith contends that the court erred in allowing him reimbursement based upon the $38,931.31 figure, being the amount awarded Aetna from the fund by virtue of its subrogation rights. Counsel for Smith argues that the correct figure should be $58,900 since that was Aetna's potential liability under the policy and it was relieved of that liability by the judgment award to Smith. We are not persuaded by this argument. As the trial court correctly concluded, the benefit received by Aetna out of the fund was the amount of its subrogation claim, $38,931.31. That was the direct benefit conferred upon it by the services of Smith's attorney in creating the fund. It is true that the $130,000 judgment award, being in excess of the insurance policy limits, operated to extinguish the insurer's continuing obligations under the policy, since such payments would have been a duplication. That result, however, occurs because of the presence in the contract of a clause so providing, and not simply because a fund was created. We find no error in the amount of the fee set by the trial court in this case.

The decision of the Circuit Court of La Salle County is affirmed.

Affirmed.

STENGEL and BARRY, JJ., concur.