HAROLD F. TENNEY, Plaintiff-Appellee, v. AMERICAN FAMILY MU-
TUAL INSURANCE COMPANY, Defendant-Appellant.

Fourth District   No. 4—83—0432

Opinion filed September 28, 1984.—Rehearing denied November 16, 1984.

Donald E. Brilley and Glen A. Featherstun, both of Armstrong, Winters, Prince, Featherstun & Johnson, of Decatur, for appellant.

Harold F. Tenney, of Tenney, Tietz & Heavner, of Decatur, for appellee.

JUSTICE MILLER delivered the opinion of the court:

On January 21, 1983, plaintiff, Harold F. Tenney, filed this action against American Family Mutual Insurance Company for legal fees and expenses incurred in the recovery of a subrogation claim. Following a bench trial, the trial court entered judgment for plaintiff in the amount of $694.31. Defendant, American Family Mutual Insurance Company, appeals.

The basic facts of the case are uncontroverted. On May 13, 1981, a vehicle driven by Robin Moore was struck in the rear by a vehicle driven by Barbara Spencer. Defendant, Moore's insurer, paid him $2,042.50 under its medical payments coverage. On January 14, 1982, Moore retained the plaintiff to represent him in his claim against Spencer.

By letter dated October 29, 1981, defendant notified Moore that it

had a subrogated claim against Spencer to the extent of the medical payments it had advanced. The letter advised that defendant would deal directly with Spencer's insurer, State Farm Insurance Company, regarding the subrogation claim. Defendant also informed Spencer and State Farm of its subrogation claim, and of the company's determination to collect.

On February 25, 1982, defendant expressly notified plaintiff that he was not to collect the subrogation claim. Plaintiff replied by letter, stating in part:

> "I am aware of your subrogation rights but nonetheless want you to make payment [of Moore's medical bills]. We will have to see what is involved in Robin's claim against State Farm before we know whether you should contribute to his legal expenses. However, I acknowledge that you are denying responsibility at this time."

At trial, plaintiff admitted that soon after he began representing Moore, he became aware that defendant did not wish him to collect the subrogation claim and would not pay him if he did so.

On November 24, 1982, plaintiff filed suit on behalf of Moore against Spencer. Shortly thereafter, a settlement was reached in the amount of $2,625 for bodily injury and $517.36 for damages to Moore's automobile.

State Farm tendered a check made payable to Moore, plaintiff, and defendant. Plaintiff offered to endorse the check if defendant would agree that an endorsement would not constitute a waiver of plaintiff's claim for attorney's fees and expenses in connection with the recovery of the subrogation claim. Defendant refused to assent, demanded that plaintiff endorse the check, and threatened to file suit if he refused to do so. Plaintiff then filed the present claim against the defendant for legal fees and expenses.

The trial court ruled in favor of plaintiff by applying the "fund doctrine." The "fund doctrine" is based on the equitable concept that an attorney who performs services in creating a fund should in equity and good conscience be allowed compensation out of the whole fund from those who seek to benefit from it. (*Baier v. State Farm Insurance Co.* (1977), 66 Ill. 2d 119, 361 N.E.2d 1100.)

> "In order to recover under the doctrine it is necessary for a plaintiff seeking recovery from a subrogee to show (1) that the fund was created as a result of legal services performed by an attorney *** (2) that the subrogee did not participate in the creation of the fund, and (3) that the subrogee benefited out of the fund that was created." *Smith v. Marzolf* (1980), 81 Ill.

App. 3d 59, 64, 400 N.E.2d 949, 953.

Defendant argues that the fund doctrine does not apply because: (1) plaintiff was informed that he was not representing defendant, (2) yet plaintiff forced his services on defendant, and (3) defendant assisted in creation of the fund.

Defendant claims that its efforts, and not plaintiff's, created the fund. The record does not support this argument. Plaintiff filed suit on Moore's behalf, prepared interrogatories, took other preliminary steps for discovery, and arranged for Moore to be examined by a medical expert in preparation for litigation. The record indicates that it was through plaintiff's negotiation that the suit was settled.

Defendant asserted its subrogation claim to Spencer and State Farm by letter and indicated that it would look to State Farm for payment. However, the correspondence also indicated that defendant merely expected State Farm to reimburse it after State Farm settled with Moore. Defendant did nothing to enforce its claim by legal process. State Farm denied all liability and offered no settlement until plaintiff filed the lawsuit on behalf of Moore.

Illinois courts have recognized that the fund doctrine should be used with caution. (*Powell v. Inghram* (1983), 117 Ill. App. 3d 895, 453 N.E.2d 1163; *Boehm & Weinstein, Chartered v. City of Chicago* (1978), 62 Ill. App. 3d 68, 379 N.E.2d 4; *Maynard v. Parker* (1979), 75 Ill. 2d 73, 387 N.E.2d 298.) In *Maynard,* the plaintiff was obligated to pay his hospital bill whether *or not* he recovered anything on a personal injury suit. The supreme court held that the fund doctrine did not apply and that the hospital was not required to pay a portion of the plaintiff's attorney fees even though the hospital's statutory lien against the plaintiff's personal injury claim was satisfied with the funds obtained by the settlement of plaintiff's claim. The court distinguished the situation in *Maynard* from the situation in which a plaintiff is obligated to pay the subrogee only in the event, and to the extent, that any net recovery is obtained.

In *Boehm & Weinstein,* the court held that the fund doctrine did not apply where the defendant merely had a lien for plaintiff's medical expenses which was satisfied from the proceeds of the settlement of plaintiff's tort action. The court stated that the fund doctrine should be applied only in cases where the subrogee is an insurance carrier and there is an express subrogation agreement between the insured and the insurer, requiring the insured to initiate legal action against the tortfeasor.

An issue similar to that presented in this appeal was addressed in the recent case of *Powell v. Inghram* (1983), 117 Ill. App. 3d 895, 453

N.E.2d 1163. In *Powell,* the plaintiff had signed a subrogation agreement with the defendant insurance company. The agreement required plaintiff to pay her insurer from any recovery received by judgment or settlement. The defendant insurance company notified plaintiff's attorney of its subrogation lien, and disclaimed any intention of employing plaintiff's attorney to collect the lien, but requested him to "protect" its interests in the event of a settlement. The appellate court held that the insurance company's refusal to hire the plaintiff's attorney while seeking to benefit from his services in obtaining a fund from which it would be reimbursed required application of the fund doctrine.

*Powell* differs from the case at bar significantly. In *Powell,* the plaintiff, through her attorney, had filed suit against the tortfeasor several months before any correspondence occurred between the attorney and plaintiff's insurance company. This suit sought the total amount of damages arising from the tort. Ten months later, the plaintiff submitted a claim for medical expenses to her insurance company. The claim included her agreement to reimburse her insurance company in the event damages were recovered by settlement or judgment. Plaintiff's insurance company then sent plaintiff's attorney a letter notifying the attorney of its subrogation rights and indicating that it would not be employing the attorney. Therefore, in *Powell* the attorney had filed suit and had been involved in the case for 10 months before the insurance company indicated that he would not be retained as counsel.

In the case at bar, the attorney admitted that he was aware soon after he began representing Moore that defendant did not want him to collect its subrogation claim and did not intend to pay him anything if he did. The attorney filed suit on behalf of his client nine months after this notification. We find no reason why plaintiff could not have filed suit on behalf of his client for damages minus the insurer's subrogation claim. The insurance company had the right to file suit on its own behalf for its subrogation claim. *Hitchcock Air Conditioning, Heating & Piping Co. v. Hazen* (1976), 43 Ill. App. 3d 483, 357 N.E.2d 69; Ill. Rev. Stat. 1981, ch. 110, par. 2—403(a).

■ A claim for attorney fees under the fund doctrine is an equitable remedy. One is not entitled to recover for services, however, when the services have been knowingly rendered for an unwilling recipient. (See *Pope v. Speiser* (1955), 7 Ill. 2d 231, 130 N.E.2d 507.) This principle applies to recovery for attorney fees under the fund doctrine. *Powell* differs from the case at bar because the attorney in *Powell* had filed suit and had been involved with the case for 10

months before he was notified by the insurance company that the insurer would be an unwilling recipient. The attorney in the case at bar admitted that he became aware that the insurance company would not pay for his services shortly after he undertook representation of his client, Moore.

■ Under the circumstances of the case at bar, we find that it would be inequitable to apply the fund doctrine. Accordingly, we reverse the judgment of the circuit court of Macon County.

Reversed.

GREEN and WEBBER, JJ., concur.