GREGORY W. MEYERS, Plaintiff-Appellee, v. RALPH R. HABLUTZEL, Defendant (Indiana Insurance Company, Claimant-Appellant).

Second District   No. 2—91—1474

Opinion filed October 23, 1992.

Thomas R. Weiler, of O'Reilly, Cunningham, Norton & Mancini, of Wheaton, for appellant.

Paul G. Krentz, of Murphy, Hupp, Foote, Mielke & Kinnally, and John R. Wienold, of Law Offices of John R. Wienold, Ltd., both of Aurora, for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

Indiana Insurance Company (Indiana) appeals from an order of the circuit court which adjudicated the rights of Indiana on its claim for payments made to its insured, plaintiff, Gregory Meyers. The court ordered plaintiff to pay $3,300.73 out of funds from a settlement, in full satisfaction of the claim. Essentially, Indiana's issues on appeal may be treated as one issue: whether the equitable fund doctrine applies to Indiana's subrogation rights to plaintiff's award in the underlying cause.

On July 17, 1990, plaintiff filed a personal injury complaint against defendant, Ralph Hablutzel, based on an automobile accident which occurred on April 20, 1990. Defendant entered an appearance and filed an answer. In September 1990, Indiana reimbursed plaintiff for his medical expenses pursuant to the terms of the automobile insurance policy. The total reimbursement was $5,000. Simultaneously, Indiana sent letters to plaintiff, his counsel, defendant's attorney and defendant's insurer, pursuant to *Tenney v. American Family Insurance Co.* (1984), 128 Ill. App. 3d 121, informing them of Indiana's intention to represent its own subrogation interests. Plaintiff and defendant settled the suit for $32,500, and Indiana was not involved in the settlement negotiations. Indiana was not a party to the suit and had not filed an appearance.

On November 21, 1991, plaintiff filed a petition to determine whether Indiana had a valid "lien" and, if so, what would be the proportionate share of the fees and expenses it should pay to plaintiff's attorney. The petition stated that $1,666.66 should be deducted from Indiana's claim for attorney fees for plaintiff's counsel and $32.61 should be deducted for the expenses.

In its response, Indiana alleged that it should not have the amounts deducted because it did not agree to be represented by plaintiff's counsel. In addition, Indiana noted that it had the right to file suit for subrogation because the statute of limitations had not yet expired. The court agreed with plaintiff and deducted the amounts for attorney fees and costs, according to the equitable fund doctrine. Indiana timely appealed.

Indiana contends that the equitable fund doctrine does not apply to the settlement in this cause because Indiana did not agree to be represented by plaintiff's attorney. Plaintiff counters that all the elements of the equitable fund doctrine apply here and, therefore, the trial court did not err in deducting the amounts for attorney fees and costs.

■ "[T]he 'fund doctrine,' is based on the equitable concept that an attorney who performs services in creating a fund should in equity and good conscience be allowed compensation out of the whole fund from all those who seek to benefit from it." (*Baier v. State Farm Insurance Co.* (1977), 66 Ill. 2d 119, 124.) This equitable doctrine is similar to the theory of *quantum meruit* in that the person seeking compensation has benefitted the other party and seeks payment for the value of his services. (*Beaton & Associates, Ltd. v. Joslyn Manufacturing & Supply Co.* (1987), 159 Ill. App. 3d 834, 848.) To be entitled to fees under this theory, the attorney must show "that (1) the fund with respect to which fees are sought was created as a result of legal services performed by the attorney; (2) the claimant or holder of the fund did not participate in its creation; and (3) the claimant or holder of the fund benefited or will benefit from it." (*Taylor v. State Universities Retirement System* (1990), 203 Ill. App. 3d 513, 520.) However, as Indiana argues, the equitable fund doctrine should not be applied when the attorney knowingly renders services for an unwilling recipient. *Beaton & Associates,* 159 Ill. App. 3d at 848-49; *Tenney,* 128 Ill. App. 3d at 124-25.

From the facts we draw two conclusions: (1) the elements of the fund doctrine have been satisfied because plaintiff's attorney procured the settlement without Indiana's assistance, thereby conferring a benefit on Indiana; and (2) after suit was filed, Indiana informed plaintiff and his counsel that it would represent its subrogation rights.

■ According to Indiana, under *Tenney,* the trial court could not apply the equitable fund doctrine because plaintiff and his counsel knew that Indiana intended to pursue its subrogation rights against defendant. Plaintiff argues, however, that *Tenney* is distinguishable because there the plaintiff did not file suit until after his counsel had

notice that the insurer did not wish to be represented by the attorney. *Tenney*, 128 Ill. App. 3d at 122.

In concluding that the equitable fund doctrine did not apply, *Tenney* distinguished *Powell v. Inghram* (1983), 117 Ill. App. 3d 895. (*Tenney*, 128 Ill. App. 3d at 123-24.) In *Powell*, 10 months after the plaintiff filed her personal injury complaint, she submitted a claim for medical expenses to her insurer. Shortly thereafter, the insurer sent a letter to the plaintiff's attorney which stated that it was not employing the plaintiff's attorney, but was notifying the attorney of the insurer's subrogation rights. The plaintiff and the defendant settled the cause. The insurer filed a counterclaim of interpleader seeking to exercise its subrogation rights. The trial court awarded the insurer the full amount. On appeal, the court found that the equitable fund doctrine should have been applied because the settlement fund was created as a result of the services rendered by the plaintiff's attorney; the insurer did not participate in the creation of the fund; and the insurer benefitted from the fund by the plaintiff's reimbursement of the funds she received from the insurer. (*Powell*, 117 Ill. App. 3d at 898.) The court stated that, although the insurer promptly notified the attorney of its subrogation and lien and its intention not to employ the attorney, the insurer's "refusal to employ plaintiff's attorney while seeking to benefit from his services in obtaining a settlement fund from which it should be reimbursed strikes us as a situation most suitable for the application of the fund doctrine." (117 Ill. App. 3d at 899-90.) We agree with plaintiff that the facts of this cause resemble those of *Powell* rather than those of *Tenney*. As in *Powell*, the plaintiff here already filed suit before the insurer paid the medical expenses and informed the attorney of its subrogation rights and its determination not to hire the attorney.

We reject Indiana's assertion that *Powell* is distinguishable because its holding was limited to a situation where the subrogee's rights were payable only from the damages recovered by the plaintiff. An insurer's right to subrogation for medical payments is determined by the terms of the contract. (*In re Estate of Scott* (1991), 208 Ill. App. 3d 846, 848.) Indiana failed to include a copy of the contract in the common-law record and did not submit a copy of it to the trial court. Thus, we must assume that the contract limited Indiana's subrogation as payable from the damages plaintiff recovered. (See *Foutch v. O'Bryant* (1984), 99 Ill. 2d 389, 392 (in the absence of a sufficient record, the reviewing court will resolve any doubts against the appellant).) However, even if we ignore the omission in the record, the re-

maining evidence does not support Indiana's position. For example, Indiana's letter to plaintiff stated in relevant part:

"A payment under this coverage permits *** Indiana *** to recover an amount equal to such payment *from any funds paid to you from the person(s) or entity(ies) responsible for your injury or from that person's(s') or entity's(ies') insurance company.* ***

We will inform the responsible person and/or his insurance company of our rights to recover from him or from his insurer. We will deal directly with said wrongdoer(s) and/or insurer(s) in recouping our payments." (Emphasis added.)

Clearly, the import of this letter is that Indiana was entitled to recoupment only from amounts actually recovered, either by plaintiff or by Indiana, from defendant or his insurer. Thus, *Powell* is not distinguishable on that basis.

We also reject Indiana's argument that "[t]here is no precedent which requires that a *'Tenney* letter' be sent before suit is filed" to preclude application of the equitable fund doctrine. *Powell* does support that proposition, notwithstanding that it was decided before *Tenney*, because the insurer did send a *Tenney*-type letter. (*Powell*, 117 Ill. App. 3d at 896, 899.) Indiana further asserts that if such a rule exists, the result "would be a race to the courthouse between the insurance carrier/subrogee and the plaintiff's attorney." We disagree. In the present cause, to protect its rights, Indiana could have joined as a plaintiff or filed an interpleader counterclaim and participated in the settlement negotiations. (See *Smith v. Marzolf* (1980), 81 Ill. App. 3d 59, 65.) Instead, Indiana did nothing until plaintiff filed the petition to adjudicate Indiana's subrogation rights. By declining to participate or employ plaintiff's attorney, Indiana reaped the benefits of the settlement procured by plaintiff's attorney while expending nothing. Such a situation is "most suitable for the application of the fund doctrine." *Powell*, 117 Ill. App. 3d at 899-90.

■ Next, Indiana claims that because the insurance contract did not require plaintiff to file suit, the equitable fund doctrine is inapplicable. As noted above, Indiana failed to include a copy of the insurance contract in the record. By failing to present an adequate record on appeal, Indiana must accept the consequence that we will construe the record to support the trial court's decision. (*Foutch*, 99 Ill. 2d at 393-94.) Moreover, Indiana's argument is meritless. In *Powell*, the court expressly rejected this argument and instead looked to whether there was a subrogation agreement. (*Powell*, 117 Ill. App. 3d at 899.) It is true that Indiana *could* have filed suit against defendant. How-

ever, when plaintiff settled in full with defendant, including the amount subject to subrogation, that settlement barred any further claim by plaintiff and/or Indiana for damages against defendant arising out of the incident at issue. (*Schultz v. Gotlund* (1989), 185 Ill. App. 3d 943, 950, *rev'd on other grounds* (1990), 138 Ill. 2d 171; *Tarzian v. West Bend Mutual Fire Insurance Co.* (1966), 74 Ill. App. 2d 314, 324-25. But *cf. Home Insurance Co. v. Hertz Corp.* (1978), 71 Ill. 2d 210, 215 (an unlimited release by a subrogor for consideration which does not include specifically an amount designated for the insurer's subrogation interest does not bar a subsequent suit by the insurer against the tort-feasor).) This is because a subrogee can enforce only those rights which the subrogor could enforce. (*Dix Mutual Insurance Co. v. LaFramboise* (1992), 149 Ill. 2d 314, 319.) Thus, following the settlement and the trial court's dismissal of the complaint with prejudice, Indiana's recovery was limited to the recoupment of funds paid to plaintiff. Consequently, Indiana is incorrect in its assertion that, because the statute of limitations had not yet run, it could have filed suit against defendant.

■ Finally, Indiana argues that plaintiff could have deleted the claim for medical expenses after he received the *"Tenney* letter." Indiana cites no authority which would allow us to find, on this basis, that the trial court abused its discretion in awarding attorney fees, which is a matter of the trial court's discretion based on equitable principles. (See *De Fontaine v. Passalino* (1991), 222 Ill. App. 3d 1018, 1039.) Consequently, we will not disturb the trial court's order on this ground.

According to the record, after Indiana informed plaintiff and his attorney of its determination to assert its own rights, Indiana did nothing for over a year until plaintiff filed the petition to adjudicate Indiana's right to subrogation. Indiana did not hire an attorney and did not participate in the settlement negotiations. The settlement amount was well in excess of Indiana's subrogation claim, and it specifically allocated $5,000 for plaintiff's medical expenses. Plaintiff filed the petition less than two weeks before the scheduled trial date. That the statute of limitations period had not expired does not alter the fact that defendant's liability was extinguished by the settlement and the dismissal of the complaint with prejudice. Plaintiff's counsel procured the settlement from which Indiana must recoup its funds. Indiana's argument, regarding the effect of the dismissal of plaintiff's complaint without prejudice, is waived because Indiana did not raise this argument in the trial court. (*In re Marriage of Rodriguez* (1989), 131 Ill. 2d 273, 279.) Under these circumstances, we conclude that the

trial court did not abuse its discretion in determining that equity would not allow Indiana to reap the benefit of plaintiff's counsel's efforts without requiring it pay for those services.

The judgment of the circuit court is affirmed.

Affirmed.

UNVERZAGT and McLAREN, JJ., concur.