LORNA McGEE *et al.*, Plaintiffs-Appellees, v. ROBERT WAYNE OLDHAM *et al.*, Defendants (American Standard of Wisconsin, Inc., Intervening Claimant-Appellant).

Fifth District    No. 5—93—0281

Opinion filed November 4, 1994.

Larry H. Hellwig, of Homire, Mueller & Bippen, of St. Louis, Missouri, for appellant.

Brad L. Badgley, of Heiligenstein & Badgley, P.C., of Belleville, for appellees.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Subrogee, American Standard of Wisconsin, Inc. (hereinafter American), appeals from an order of the circuit court of St. Clair County granting the motion for adjudication of lien with award of attorney fees and a *pro rata* share of expenses of plaintiffs, Lorna McGee and Louella McGee. American contends that the trial court erred in granting said motion in that plaintiffs' personal-injury attorney is not entitled to recover any portion of the medical payments made by American under plaintiffs' policy, as American participated in the creation of the settlement fund and notified plaintiffs' attorney of its intention to represent its own interests before settlement of plaintiffs' underlying personal-injury action. We affirm.

# I

The facts of this case are not in dispute. On April 4, 1991, Louella McGee was driving her car in which Lorna McGee was a passenger. Also in the car were Lorna's children, Linda Williams and Monique Williams, both minors, and Louella's son, Walter Smith, a minor. On that date, they were struck by a car negligently driven by defendant, Robert Wayne Oldham. Prior to the accident, defendant had been drinking at Pop's Saloon, owned by the other defendant, Mississippi Ave., Inc. At the time of the accident, Louella McGee was insured with American. Her policy carried medical-payments coverage of up to $2,000 per person. Oldham was insured under a policy issued by Safeco Insurance Company (hereinafter Safeco).

On April 19, 1991, plaintiffs retained the law firm of Heiligenstein & Badgley, P.C., to represent them against defendants Oldham and Mississippi Ave., Inc. Suit was filed against defendants on May 13, 1991. At some point, and without the assistance of legal counsel, plaintiffs filed claims with American on behalf of themselves and their children. American made the following medical payments:

| Lorna McGee | — | $1,940 |
| Louella McGee | — | 335 |
| Linda Williams | — | 240 |
| Monique Williams | — | 160 |
| Walter Smith | — | 75. |

On September 17, 1991, American notified Safeco of its medical-payment subrogation claim. Safeco acknowledged the letter through a reply letter dated September 27, 1991. The American adjuster assigned to the case sent out letters requesting status updates to Safeco on November 27, 1991, March 5, 1992, and May 4, 1992. The letters asked Safeco whether it expected the matter to be settled soon. All letters asked Safeco to notify American when the lawsuit was settled so that the American adjuster could then forward medical bills to Safeco. On May 21, 1992, the Safeco adjuster sent American a letter which stated: "The file still remains in litigation and we are no closer to settling this claim than we were previously. Please diary your file ahead six months, and upon settlement of this, your lien will be protected." The American adjuster signed an affidavit which stated that she first learned the identity of plaintiffs' personal-injury attorney through a conversation with the Safeco adjuster on June 24, 1992.

On July 9, 1992, the American adjuster wrote to C.E. Heiligenstein and advised him of American's medical-expense liens on plaintiffs and their children and that American did not want Heiligenstein to represent American in this matter, but rather American intended to represent its own interests. Heiligenstein replied on July 28, 1992, that suit was filed on September 9, 1991, that the matter was already prepared, and that settlement demands, including American's subrogation interest, were already submitted. Heiligenstein advised American of its intention to petition the trial court for one-third of the subrogation amount as attorney fees and a *pro rata* share of costs.

On October 5, 1992, the attorney for American sent a certified letter to Heiligenstein informing him of American's intention to file an entry of appearance on October 12, 1992, as cocounsel for Lorna McGee and asking whether Louella's or any of the children's "matters are in suit." The American adjuster asked to be notified when claims were filed on these matters, as he would be representing American on these liens as well as Lorna's.

Heiligenstein replied by letter dated October 13, 1992, that claims were already filed on behalf of plaintiffs, but that no claims were yet filed on the children. The letter also stated that settlement demands had been made. On October 26, 1992, Safeco sent American's attorney

a letter stating: "We will honor your liens in this matter. We are presently negotiating with Mr. Heiligenstein. Upon settlement of these claims, checks will be issued directly to your office in payment of American Standards' liens."

On December 9, 1992, a settlement was reached between Safeco and plaintiffs' attorney, C.E. Heiligenstein, as to plaintiffs' claims and their children's claims. On January 8, 1993, after settlement of the case, American entered its appearance. On February 3, 1993, Heiligenstein filed a motion to adjudicate liens regarding plaintiffs and their children. Ultimately, the trial court granted Heiligenstein's motion for adjudication of lien with award of attorney fees and a *pro rata* share of expenses. American appeals.

## II

American contends that plaintiffs and their attorney were notified that American planned to represent its own interests and that American did, in fact, reach a separate settlement agreement with Safeco regarding its medical-payment subrogation interests prior to the settlement of plaintiffs' personal-injury claim so that the trial court erred in awarding plaintiffs' attorney an attorney fee and a *pro rata* share of expenses from the proceeds of American's medical-payment subrogation agreement. Plaintiffs' attorney responds that the evidence in the record demonstrates that American did nothing more than make clear its intention to recoup its medical subrogation interest from the settlement fund created by the lawsuit. Plaintiffs' attorney also argues that the record demonstrates that a settlement fund was created by him and American did nothing to participate in the creation of that fund. We agree with plaintiffs' attorney.

■ The "fund doctrine" is one of equity, and equity clearly demands that if American reaped the benefits of plaintiffs' attorney's services, then plaintiffs' attorney should be allowed compensation out of the whole fund. (*Baier v. State Farm Insurance Co.* (1977), 66 Ill. 2d 119, 361 N.E.2d 1100.) To be entitled to fees under the fund doctrine, the attorney must show (1) that the fund was created as the result of legal services performed by an attorney, (2) that the subrogee did not participate in the creation of the fund, and (3) that the subrogee benefitted out of the fund that was created. (*Meyers v. Hablutzel* (1992), 236 Ill. App. 3d 705, 707, 603 N.E.2d 91, 93; *Smith v. Marzolf* (1980), 81 Ill. App. 3d 59, 64, 400 N.E.2d 949, 953.) "When these conditions are shown to exist, then equity will apportion the fees and expenses incurred in creating the fund among those who benefit from its creation." (*Smith*, 81 Ill. App. 3d at 64, 400 N.E.2d at 953.) In the instant case, the trial court correctly concluded that the conditions permitting an equitable apportionment were satisfied.

■ On April 19, 1991, plaintiffs retained the law firm of Heiligenstein & Badgley, P.C., to represent them against a negligent driver and the dramshop which served him alcohol prior to the accident. Suit was filed on May 13, 1991. It was not until July 9, 1992, that American notified Heiligenstein of its intention to represent its own interests for its medical-payments subrogation claim. Heiligenstein thereafter informed American that suit had already been filed and demands had been made, including American's subrogation interest. Heiligenstein further informed American that he would seek one-third of this amount for attorney fees plus costs. While it is true that American had been in contact with Safeco from September 19, 1991, it is clear that American's participation was limited to protecting its own subrogation rights.

A close review of the record shows that American did not participate in the creation of the settlement fund. For example, letters sent by the American adjuster assigned to the case to Safeco clearly indicate American's passive position in this litigation. A November 27, 1991, letter from American to Safeco states: "Please contact me to let me know whether this matter will be settled soon. Please let me know once the lawsuit on this claim has been settled, and I will send you any medical bills you need at that time." From this letter, it is clear that American knew as early as November 27, 1991, that a lawsuit had been filed by plaintiffs, yet American made no attempt to discover plaintiffs' attorney and let him or her know of its intention to represent its own interests in this matter until July 9, 1992. By this time discovery was completed, as evidenced by a settlement demand made by plaintiffs' attorney on July 21, 1992.

Additionally, the agreement between American and Safeco, as evidenced by the October 5, 1992, and October 26, 1992, letters, shows that American's participation was limited to protecting its own subrogation rights. Safeco's letter to American discloses that American's liens would not be paid until settlement was reached with attorney Heiligenstein. (See *Smith v. Marzolf* (1980), 81 Ill. App. 3d 59, 400 N.E.2d 949.) Moreover, even upon learning of Heiligenstein's intention to petition the trial court for attorney fees and costs, American took no action. American did not enter its appearance until January 8, 1993, almost one month after a settlement had been reached. American in no way participated in the creation of this fund.

## III

American cites the case of *Tenney v. American Family Mutual Insurance Co.* (1984), 128 Ill. App. 3d 121, 470 N.E.2d 6, which stands

for the proposition that a plaintiff's attorney is not entitled to recover for his services if the services were knowingly rendered for an unwilling recipient. *Tenney*, however, is clearly distinguishable from the case at bar. In *Tenney*, the attorney admitted that soon after he began representing his client he became aware that the insurance company did not want him to collect its subrogation claim and did not intend to pay him anything if he did. The attorney in *Tenney* did not file suit on behalf of his client until nine months after such notification. Here, suit was filed long before American notified attorney Heiligenstein of its intention to represent itself on the subrogation claim.

Further, an insurance company's mere writing of a letter to the plaintiff's attorney expressing its desire to represent its own interest, without more, is not enough to overcome the fund doctrine. (See *Perez v. Kujawa* (1992), 234 Ill. App. 3d 957, 961-62, 602 N.E.2d 38, 41.) We believe equity requires more. What is necessary is for the subrogee to show some participation in the creation of the fund reflecting more than a desire to protect its subrogation rights. Nothing of the sort was done in the instant case, and it cannot be said under the facts presented that American participated in the creation of the settlement fund.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is affirmed.

Affirmed.

RARICK and MAAG, JJ., concur.