PRINCIPAL MUTUAL LIFE
INSURANCE COMPANY, an
Iowa Corporation, Plaintiff,

v.

Ellen BARON, Defendant.

No. 96 C 608.

United States District Court,
N.D. Illinois,
Eastern Division.

May 28, 1997.

Jennifer A. Pritz, Jon B. Kennett of Ancel, Glink, Diamond, Cope & Bush, P.C., Chicago, IL, for Principal Mut. Life Ins. Co.

Ronald O. Roeser, Roeser, Vucha & Carbary, Elgin, IL, Robert L. Berkover, Richard

L. Berkover, P.C., Chicago, IL, for Ellen Baron.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The defendant, Ellen Baron, was an insured "dependent" under a health insurance policy issued by the plaintiff, Principal Mutual Life Insurance Company ("Principal").[1] Ms. Baron was injured by an uninsured motorist. Pursuant to the health insurance policy, Principal paid $51,859.99 to the health care providers on behalf of Ms. Baron. Ms. Baron sued her automobile insurance carrier, USF & G, under the uninsured motorist provision. The parties settled for $780,000, $300,000 of which was an initial lump sum payment with the balance to be paid over 20 years. Principal sued Ms. Baron to recover $51,859.99 pursuant to a reimbursement clause in the health insurance policy. Both parties moved for summary judgment. For the following reasons, both parties' motions are granted, in part, and denied, in part.

Insurance policies are subject to the general rules of contract construction. *Scottish & York Int'l Ins. Group/Guar. Ins. Co. v. Comet Cas. Co.*, 207 Ill.App.3d 881, 566 N.E.2d 477, 481, 152 Ill.Dec. 790, 794 (1990). If the contract terms are unambiguous, the parties' intent must be ascertained exclusively from the express language of the contract. *Meyer v. Marilyn Miglin, Inc.*, 273 Ill. App.3d 882, 652 N.E.2d 1233, 1238, 210 Ill. Dec. 257, 262 (1995). If the policy is unambiguous, the clause at issue "may be applied as written, unless it contravenes public policy." *Frigo v. Motors Ins. Corp.*, 271 Ill. App.3d 50, 648 N.E.2d 180, 185, 207 Ill.Dec. 724, 729 (1995). However, if the policy terms are ambiguous, they must be construed in favor of the insured. *Id.*

The Principal's health insurance policy provides, in relevant parts, as follows:

1. The following facts are taken from the Principal's 12(M) Statement. They are deemed admitted because Ms. Baron did not file a 12(N) Statement. N.D. Local R. 12(N)(3).

2. The effect of a subrogation clause is identical to that of a reimbursement clause. In *In re Scott*, for example, the tortfeasor settled with the insured's estate. Subsequently, the insurance

### Part IV—BENEFITS

Section E(1)—Right of Reimbursement

Article 1—Applicability

Where allowed by law, this section will apply to any Member or Dependent who:

  a.  receives payment under this policy for confinement, treatment or service as the result of a sickness or injury; and

  b.  had a lawful claim against other parties or insurers for compensation damages or other payment because of that same sickness or injury; and

  c.  recovers payment from such parties or insurers which includes an amount applicable to confinement, treatment or service for which benefits have been paid under this policy.

Article 2—Right of Reimbursement

When those provisions apply, the Member or Dependent will reimburse the Company to the extent of the benefit payments made under this policy. Such reimbursement will not exceed the lesser of:

  a.  the amount of benefit payment made under this policy for confinement, treatment or service as a result of the sickness or injury for which payment is recovered from the other parties or insurers; or

  b.  the amount recovered from the other parties or insurers.

"Medical subrogation clauses in insurance contracts are generally enforceable." *In re Scott*, 208 Ill.App.3d 846, 567 N.E.2d 605, 606, 153 Ill.Dec. 647, 648 (1991). The instant reimbursement clause is analogous to subrogation clauses.[2] Ms. Baron does not argue that the Principal's reimbursement clause is ambiguous. She argues instead that its clear meaning is that Principal would be entitled to reimbursement only if Ms.

company filed suit to recoup the money it paid to the deceased for medical expenses by exercising its contractual subrogation rights. 567 N.E.2d at 605–06, 153 Ill.Dec. at 647–48; *see also Capitol Indem. Corp. v. Strike Zone, S.S.B. & B. Corp.*, 269 Ill.App.3d 594, 646 N.E.2d 310, 311–12, 206 Ill.Dec. 943, 944–45 (1995).

Baron recovered from a tortfeasor or a tortfeasor's insurer. It is clear from a reading of the provision that it is not so limited.

■ The term "insurers" contemplates insurers other than the tortfeasor's because Article I section (a) refers to payment "as the result of a sickness" as well as injury. If Principal was only entitled to reimbursement in the event that Ms. Baron collected from a tortfeasor or its insurer for an injury, "sickness" would not have been included. *See Lundberg v. Church Farm, Inc.,* 151 Ill. App.3d 452, 502 N.E.2d 806, 812, 104 Ill.Dec. 309, 315 (1986) (contract should be interpreted so as not to render any terms superfluous).

In support of her interpretation of the Principal's reimbursement provision, Ms. Baron invokes public policy. However, the cases she cites, among others, *Sulser v. Country Mut. Ins. Co.,* 147 Ill.2d 548, 591 N.E.2d 427, 169 Ill.Dec. 254 (1992), cut against her. In *Sulser,* the underinsured motorist provision allowed the insurance company to deduct from coverage workers' compensation benefits received by the insured. The Court concluded that since the purpose of the under- and uninsured motorist policies, analogous to the provision under which Ms. Baron recovered from USF & G, is to place the insured in the same position she would have been had the tortfeasor been adequately insured, an insured should not recover more under her own policy than she would have if the tortfeasor's policy had been adequate. *Id.* 591 N.E.2d at 430, 169 Ill.Dec. at 257. Principal's reimbursement right, to which Ms. Baron agreed, is analogous to *Sulser*'s workers' compensation benefits. *Accord, Cummins v. Country Mutual Ins. Co.,* 281 Ill.App.3d 5, 666 N.E.2d 909, 217 Ill.Dec. 240 (1996).

■ Ms. Baron also argues that Principal has not shown that her settlement with USF & G includes the "confinement, treatment or service" expenses—the medical expenses—which Principal paid on her behalf. This contention is not supported by the record. The defendant's Settlement Agreement with

USF & G states that Ms. Baron releases USF & G from

> all bodily injury liability under the uninsured motorists and/or any coverage afforded under Policy # PPA11038737600 and from any and all actions, causes of action, claims, demands, damages, costs, loss of services, expenses, and compensation on account of, or in any way growing out of, any and all known and unknown personal injuries, developed or undeveloped, temporary or permanent, resulting or to result from an accident that occurred on or about December 28, 1993 at or near Elgin, Illinois resulting in injuries to Ellen Baron.

Since Ms. Baron had a right to assert her medical bills as damages and expenses under the above Policy, the Settlement Agreement encompasses the medical bills paid by Principal.

■ Ms. Baron further argues that Principal is not entitled to $51,859.99, because the settlement with USF & G, albeit a total of $780,000, did not fully compensate her for her extensive injuries. However, under Illinois law, "[t]o the extent, if any, that the ... settlement did not accurately compensate [Ms. Baron], [Principal] is not at fault," and its contractual subrogation rights are not affected. *In re Scott,* 567 N.E.2d at 606–07, 153 Ill.Dec. at 648–49 *Capital Indem. Corp.,* 646 N.E.2d at 311–12, 206 Ill.Dec. at 944–45.

■ Finally, Ms. Baron argues that the Illinois' equitable "fund" doctrine requires that the amount of the Principal's recovery be reduced by its share of the defendant's attorney's fees. The "fund" doctrine holds that an attorney who performs services in creating a fund should be compensated out of the fund by all those who will benefit from it. Thus, the subrogee's recovery is reduced by its share of the attorney's fees and costs " 'in proportion to the benefit received by the subrogee'." [3] *Smith v. Marzolf,* 81 Ill.App.3d 59, 400 N.E.2d 949, 953, 36 Ill.Dec. 369, 374 (quoting *Baier v. State Farm Ins. Co.,* 66 Ill.2d 119, 361 N.E.2d 1100, 1102, 5 Ill.Dec. 572, 574 (1977)). In the instant case, Ms. Baron's attorney was entitled to one third of

**3.** Ms. Baron does not seek to reduce Principal's recovery by its proportional share of costs.

her settlement with USF & G.[4] Thus, Principal's reimbursement claim of $51,859.99 would be reduced by one third of that amount, $17,286.66, yielding Principal's total recovery of $34,573.33.

Ms. Baron's task is to show "(1) that the fund was created as a result of legal services performed by an attorney employed by h[er], (2) that [Principal] did not participate in the creation of the fund, and (3) that [Principal] benefited out of the fund that was created." *Id.* It is undisputed that Ms. Baron's attorneys negotiated the settlement between her and USF & G, and that Principal will derive a benefit from this settlement if it prevails in the instant suit.

Principal argues that it participated in the creation of the fund because it hired its own attorneys. The record shows, however, that the plaintiff's attorneys were concerned merely with protecting their client's right to reimbursement, not creating the fund.[5] This does not constitute participation in creating a fund. *McGee v. Oldham,* 267 Ill.App.3d 396, 642 N.E.2d 196, 199, 204 Ill.Dec. 734, 737 (1994); *Smith,* 400 N.E.2d at 953, 36 Ill.Dec. at 373. The policy behind the "fund" doctrine is to prevent the subrogee from freeloading. *See Brase v. Loempker,* 267 Ill. App.3d 415, 642 N.E.2d 202, 205, 204 Ill.Dec.

740, 743 (1994); *Powell v. Inghram,* 117 Ill. App.3d 895, 453 N.E.2d 1163, 1166, 73 Ill. Dec. 174, 177 (1983). Thus, "to overcome the fund doctrine[,] . . . [w]hat is necessary is for the subrogee to show some participation in the creation of the fund reflecting more than a desire to protect its subrogation rights." *McGee,* 642 N.E.2d at 199, 204 Ill.Dec. at 737. By, at least, March 20, 1995, Principal knew that Ms. Baron was seeking recovery from USF & G. USF & G made an offer to Ms. Baron sometime in late summer or early fall of 1995. During the intervening months, Principal could have offered some sort of assistance to Ms. Baron's counsel.[6] *Brase,* 642 N.E.2d at 205, 204 Ill.Dec. at 743 (assistance with discovery); *see also Powell,* 453 N.E.2d at 1166, 73 Ill.Dec. at 177 (hiring subrogor's attorney may immunize subrogee against fund doctrine). Principal could also have participated in the creation of the fund through settlement negotiations with USF & G or intervention in the law suit. *See Meyers v. Hablutzel,* 236 Ill.App.3d 705, 603 N.E.2d 91, 94, 177 Ill.Dec. 310, 313 (1992); 735 ILCS 5/2–409 (1992). Having failed to undertake any such steps, Principal is responsible for its share of Ms. Baron's counsel's fees.[7] Thus, it may recover only $34,-573.33.

**4.** I deem this fact undisputed because both parties submit a copy of Ms. Baron's counsel's letter, dated September 20, 1995, in which he states that "our firm is entitled to a fee of one-third of all sums which may be recovered out of this fund." Furthermore, the following facts are deemed undisputed because they are set forth in the correspondence upon which both parties rely in their summary judgment motions.

**5.** For example, in a July 8, 1995 letter, Principal's counsel wrote to USF & G, asking it to acknowledge the plaintiff's lien, to include Principal's name on any settlement check, and to advise Principal of any settlement talks so that it could participate insofar as necessary to protect its interests. By July 1995, Principal was anticipating conflict with Ms. Baron and was actively managing that situation through communication with her counsel and USF & G. Again, this expenditure of resources was not directed towards the creation of the fund.

**6.** Implicit in the participation requirement is the expectation that some participation route is available. Here, as early as in April 1995, Ms. Baron's counsel questioned the plaintiff's reimbursement right. Specifically, in an April 7, 1995 letter, he wrote that if the Principal's poli-

cy's subrogation language was limited to third party recovery, Principal would not have the privilege of subrogation. He also indicated that he asked Ms. Baron to show him the policy so that he could review its specific language. I cannot conclude from this letter that Ms. Baron's relationship with Principal was already so antagonistic that any cooperation in the creation of the fund was impossible.

**7.** The fact that Principal informed USF & G that it would protect its right to recover the amount of medical benefits it paid on behalf of Ms. Baron does not "preclude [the] application of the fund doctrine." *Perez v. Kujawa,* 234 Ill.App.3d 957, 602 N.E.2d 38, 41, 176 Ill.Dec. 731, 734 (1992). The Illinois courts have held that the "fund" doctrine does not apply when the attorney knowingly renders services for an unwilling recipient. *Id.* 602 N.E.2d at 40, 176 Ill.Dec. at 733; *Tenney v. American Family Mut. Ins. Co.,* 128 Ill.App.3d 121, 470 N.E.2d 6, 8–9, 83 Ill.Dec. 251, 253–54 (1984). In *Tenney* and *Perez,* the subrogee notified the attorney of its intention to represent its interests prior to the time the attorney initiated the law suit. Here, by contrast, Principal notified only USF & G and did so after Ms. Baron already filed her claim against USF & G. More-

## Conclusion

For the reasons stated above, both parties' summary judgment motions are granted in part and denied in part. Principal's recovery under its health policy's reimbursement clause is $34,573.33.[8]

over, "an insurance company's mere writing of a letter ... expressing its desire to represent its own interest, without more, is not enough to overcome the fund doctrine." *McGee*, 642 N.E.2d at 199, 204 Ill.Dec. at 737 (citing *Perez*, 602 N.E.2d at 41, 176 Ill.Dec. at 734).

8. The Principal's Motion to Strike Certain Paragraphs of Defendant's Statement of Material Facts is denied as moot.