TONI SCHALEY POWELL, Plaintiff-Appellant, *v.* KIMBERLY K. IN-
GHRAM, Defendant—(Country Mutual Insurance Company, Respondent-Ap-
pellee).

Third District  No. 82—424

Opinion filed September 12, 1983.

James N. Vail, of Chicago, for appellant.

James J. Elson, of James J. Elson, Chartered, of Canton, and Robert C.
Stoerzbach, of Barash, Stoerzbach & Henson, of Galesburg, for appellee.

JUSTICE BARRY delivered the opinion of the court:

Plaintiff Toni Schaley Powell appeals from an order of the circuit court of Henderson County allowing the subrogation claim of Country Mutual Insurance Company to be paid out of the $40,000 settlement proceeds of her personal injury lawsuit.

This litigation arose out of a single-car accident on May 18, 1977, when the car in which plaintiff was a passenger and which was driven by her sister Kimberly Inghram (defendant herein) went out of control on Carman Road in Henderson County and rolled over several times. Plaintiff received a fractured neck. She was hospitalized at Iowa City Hospital from the date of the injury until July 2, 1977, and continued to receive outpatient care at the Hospital until May 31, 1978. Her medical bills totalled $5,049.33. Plaintiff was 17 years old at the time of the accident; she became 18 on April 26, 1978. Both plaintiff and her mother were named insureds under an automobile liability policy issued by Country Mutual Insurance Company. The car in which plaintiff was riding was insured by a different company, Allstate.

On May 11, 1979, about two years subsequent to the accident, plaintiff and her mother signed and submitted a claim for medical expenses to Country Mutual. The claim included an agreement to reimburse Country Mutual in the event damages were recovered, either by settlement or judgment, as a result of the injuries for which the listed bills were incurred. Country Mutual made a final payment of $4,814.83 on May 18, 1979, and on the same date, Country Mutual sent to Allstate, the insurer of defendant, a notice of lien and subrogation interest in the amount of $5,049.33 for plaintiff's medical expenses. On May 23, 1979, Country Mutual sent plaintiff's attorney a letter which stated:

"[W]e are not employing you to recover our subrogation money paid under the medical benefits of the policy, but merely notifying you of our subrogation rights so you might protect our interests in the event settlement is reached with Allstate."

Plaintiff and defendants' liability carrier, Allstate, subsequently agreed upon a $40,000 settlement of the personal injury action, and Allstate issued one check for $34,950.67 payable to plaintiff and her attorney and a second check for $5,049.33 payable to plaintiff, her attorney, and Country Mutual. Plaintiff then filed a motion to have Country Mutual's lien declared void. Allstate responded by depositing the money with the clerk of the circuit court pursuant to a counterclaim of interpleader. After hearing arguments of counsel the trial court ruled that Country Mutual was entitled to subrogation rights in

the settlement in the amount of $5,049.33 and that plaintiff's attorney was entitled to $1,800 fees and costs payable from Country Mutual's portion of the settlement. Later, after a motion to vacate filed by Country Mutual, the trial court reversed and vacated the award of attorney fees and costs. Plaintiff has appealed, contending (1) that Country Mutual was erroneously awarded its subrogation claim and (2) in the alternative, that if the subrogation claim was properly allowed, Country Mutual should be required to pay its proportionate share of the fees and expenses incurred by plaintiff in creating the settlement fund.

■ Plaintiff disputes the subrogation award on the ground that plaintiff was a minor when the medical expenses were incurred and, under Illinois law, the parents of a minor are primarily responsible for medical expenses. (*Kennedy v. Kiss* (1980), 89 Ill. App. 3d 890, 412 N.E.2d 624.) Plaintiff argues that Country Mutual's payments of medical expenses were for the benefit of plaintiff's mother, not plaintiff, and consequently that Country Mutual has no subrogation right against the settlement of a tort claim by the minor. Plaintiff relies upon *Estate of Woodring v. Liberty Mutual Fire Insurance Co.* (1979), 71 Ill. App. 3d 158, 389 N.E.2d 211, where a four-year-old child was injured, and the court held that the medical expense payments were for the benefit of the child's parents and could not be subrogated to the settlement of the tort claim by the child's estate.

The facts of the instant case contain some substantial variances from the facts in *Woodring*. Although plaintiff here was a minor at the time of the accident, she had reached her majority before her medical treatment was concluded. At the time of the accident, she was a named insured along with her mother on the policy of insurance issued by Country Mutual. Furthermore, after her 18th birthday and acting as insured under the policy, she signed a claim directing Country Mutual to pay her medical expenses and agreeing to reimburse Country Mutual from any money recovered by judgment or settlement as damages for her injuries. In effect, plaintiff assumed responsibility for her medical bills when she became an adult, and she sought payment of insurance benefits due her as a named insured.

Although plaintiff argues that Country Mutual somehow acted improperly in obtaining plaintiff's signature on the subrogation agreement after she reached her majority, the record contains no allegations of fraud or deception on the part of Country Mutual. Courts should not presume fraud or impropriety where none is alleged or proved.

We believe the trial court correctly ruled that Country Mutual was

entitled to enforce its subrogation rights as to the settlement obtained by plaintiff, and we affirm that portion of the court's order.

■ Plaintiff next asserts an alternative argument: Assuming the subrogation claim was properly allowed, then the trial court erred in not requiring Country Mutual to pay a proportionate share of plaintiff's attorney fees and costs. Plaintiff seeks application of the "fund doctrine" to the facts of this case. The fund doctrine is an equitable concept which provides that an attorney who performs services in creating a fund is entitled to be compensated out of the entire fund by all those who benefit from the creation of the fund. (*Baier v. State Farm Insurance Co.* (1977), 66 Ill. 2d 119, 361 N.E.2d 1100.) The requirements for recovery under the fund doctrine have been stated as follows:

> "In order to recover under the doctrine it is necessary for a plaintiff seeking recovery from a *subrogee* to show (1) that the fund was created as a result of legal services performed by an attorney employed by him, (2) that the subrogee did not participate in the creation of the fund, and (3) that the subrogee benefited out of the fund that was created. [Citation.] When these conditions are shown to exist, then equity will apportion the fees and expenses incurred in creating the fund among those who benefit from its creation." (Emphasis added.) *Smith v. Marzolf* (1980), 81 Ill. App. 3d 58, 64, 400 N.E.2d 949, 953.

■ Those requirements have been met in this case before us. The settlement fund was created as a result of the legal services performed by plaintiff's attorney; the subrogee, Country Mutual, did not participate in the creation of the fund; and Country Mutual benefited from the fund in that it was reimbursed in full for the medical expenses previously paid. Country Mutual argues that the test is not whether the subrogee benefited from the fund but rather whether there was an express or implied agreement that the subrogee would pay its share of the cost of creating the fund. Country Mutual then points to the letter of May 23, 1979, to plaintiff's attorney expressly stating that Country Mutual was *not* employing him to recover its subrogation claim as proof that no such agreement existed. In other words, Country Mutual insists that its express disclaimer of employment should except it from any liability under the fund doctrine.

Illinois courts have recognized that the fund doctrine should be used with caution. (*Boehm & Weinstein, Chtd. v. City of Chicago* (1978), 62 Ill. App. 3d 68, 379 N.E.2d 4; *Maynard v. Parker* (1977), 54 Ill. App. 3d 141, 369 N.E.2d 352, *aff'd* (1979), 75 Ill. 2d 73, 387 N.E.2d 298.) In *Maynard* it was held that a hospital was not required

to pay a portion of the plaintiff's attorney fees even though that hospital's statutory lien against the plaintiffs personal injury claim was satisfied with funds obtained by the settlement of plaintiff's claim. The supreme court noted that there is a difference between the situation where the plaintiff is obligated to pay the subrogee only in the event and to the extent that any net recovery is made, as was the case in *Baier v. State Farm Insurance Co.* (1977), 66 Ill. 2d 119, 361 N.E.2d 1100, and where the plaintiff was a *debtor* obligated to pay a debt out of any resources available. The plaintiff in *Maynard v. Parker* (1979), 75 Ill. 2d 73, 387 N.E.2d 298, was, of course, obligated to pay his hospital bill whether he recovered anything on his personal injury claim, and the fund doctrine was held not to apply.

In *Boehm & Weinstein, Chtd. v. City of Chicago* (1978), 62 Ill. App. 3d 68, 379 N.E.2d 4, the fund doctrine was again held not to apply to a case where the plaintiff's employer, the city of Chicago, merely had a lien for plaintiff's medical expenses which was satisfied from the proceeds of settlement of plaintiff's tort action. The reviewing court in *Boehm* indicated that the fund doctrine should be applied only in cases where the subrogee is an insurance carrier and where there is an express agreement between the insured and insurer, subrogating the insurer to any claim the insured had against a third-party tortfeasor, and requiring the insured to initiate legal action against the third-party tortfeasor. Country Mutual insists that the absence of any agreement requiring plaintiff to bring suit against defendant distinguishes this case from *Baier* and from the statements in *Boehm*.

We believe that the important fact is not whether plaintiff was expressly required by the terms of the subrogation agreement to seek a recovery of damages, but rather whether the subrogee's rights were expressly payable only from the damages recovered—that is, the "fund." In the case before us, plaintiff agreed to pay Country Mutual from any damages recovered by judgment or settlement, but did not promise to initiate a personal injury action. Actually, such a promise was not necessary under the facts and circumstances presented to us. Plaintiff had filed a complaint for damages against defendant in July of 1978, about 10 months before she signed the subrogation agreement.

Country Mutual promptly notified plaintiff's attorney of its subrogation lien and at the same time disclaimed any intention to employ plaintiff's attorney to collect the lien, merely requesting him to "protect" its interests in the event of settlement. Country Mutual's refusal to employ plaintiff's attorney while seeking to benefit from his

services in obtaining a settlement fund from which it should be reimbursed strikes us as a situation most suitable for the application of the fund doctrine. Principles of equity are intended to be used to prevent an injustice and the Illinois case law dictates the results we reach.

Accordingly, we hold that the trial court erred in vacating its award of $1,800 costs and attorneys fees to be paid from Country Mutual's portion of the settlement. We reverse the order of June 4, 1982, which vacated the award and we reinstate that portion of the judgment order of April 26, 1982, which awarded fees and costs to plaintiff's attorney.

As indicated above, we also affirm that portion of the order allowing Country Mutual's subrogation right.

Affirmed in part; reversed in part.

ALLOY and SCOTT, JJ., concur.