KYLE BRASE, by his Mother and Next Friend, Joann Brase, *et al.*, Plaintiffs, v. WILLA D. LOEMPKER, Defendant (William J. Billeaud, Petitioner-Appellant; Country Companies Insurance Company, Respondent-Appellee).

Fifth District   No. 5—93—0796

Opinion filed November 7, 1994.

William J. Billeaud, of Pratt, Bradford & Tobin, P.C., of East Alton, appellant *pro se*.

Stephen C. Mudge and Michael J. Bedesky, both of Reed, Armstrong, Gorman, Coffey, Thomson, Gilbert & Mudge, P.C., of Edwardsville, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

This action arose out of an automobile accident between plaintiff, Kyle Brase, a minor, represented by his mother and next friend, Joann Brase, and defendant, Willa D. Loempker. Plaintiff was insured by Country Companies Insurance Company (Country Companies), and defendant was insured by State Farm Mutual Automobile Insurance Company (State Farm). Ultimately, plaintiff's attorney reached a settlement agreement with defendant's insurance company for $12,000, of which $3,800 was paid to Country Companies by separate check to reimburse it for its medical payments made

under plaintiff's policy. Plaintiff's attorney filed a petition for adjudication of attorney's lien, claiming that attorney fees and a *pro rata* portion of the litigation expenses incurred by plaintiff's attorney should be deducted from the $3,800 subrogation portion of the settlement. The trial court denied the petition, and plaintiff's attorney appeals. Consequently, the only parties taking part in this appeal are plaintiff's attorney and Country Companies. The issue we are asked to consider is whether the fund doctrine applies to the facts of this situation so as to justify the reduction of the subrogation award to the medical-payment insurer by one-third for attorney fees plus a *pro rata* amount of the insured's expenses. We conclude that the doctrine does apply and therefore reverse and remand.

## I

The accident occurred on April 4, 1992. On April 6, 1992, Country Companies obtained a copy of the police report concerning the accident. On April 7, 1992, Country Companies took an oral report from plaintiff. Country Companies also attempted to take an oral statement from defendant, but defendant refused. On May 15 and May 22, 1992, Country Companies sent letters to State Farm notifying State Farm of its payment of plaintiff's medical expenses to date and asking State Farm to acknowledge Country Companies' subrogation rights under its policy with plaintiff. The letter of May 15, 1992, specifically stated: "Please keep our subrogation rights in mind when settling your claim with Mr. Brase." The letter of May 22, 1992, stated: "Please honor our subrogation rights when settling your claim with Mr. Brase."

On June 2, 1992, Country Companies, through its field claim representative, Jerry Krone, wrote plaintiff's attorney, Bill Billeaud, and informed him of Country Companies' desire to protect its subrogation rights for the medical payments made on plaintiff. On June 10, 1992, claims coordinator Jim Miller of Country Companies sent a letter to State Farm with a carbon copy to Billeaud which stated that Country Companies wanted its medical subrogation claim deleted from any settlement negotiations or litigation so that Country Companies could handle the matter directly with State Farm. The letter also explained that Country Companies is a member "of mandatory medical arbitration with State Farm, and in the event we should approach the statute of limitations, we will take the necessary measures at that time to protect our claim." The arbitration program between State Farm and Country Companies provided for a two-year statute of limitations.

On June 12, 1992, Billeaud wrote State Farm and stated, in

pertinent part: "For the purpose of protecting and perfecting our attorney's lien herein, please be advised that we claim a percentage of any sum recovered herein, whether same be by compromise or suit." Billeaud attempted to reach settlement with State Farm prior to filing suit, but no settlement was reached because State Farm claimed negligence on the part of plaintiff. On June 15, 1992, Billeaud filed suit against defendant. On June 24, 1992, Country Companies' claims coordinator again told Billeaud through a letter that Country Companies would "continue to deal direct with State Farm in regard to our medical subrogation."

On August 13, 1992, State Farm tendered an offer to settle with Country Companies for 80% of the medical pay, but Country Companies refused to settle for anything less than 100%. Jim Miller, Country Companies' claims coordinator, explained that he refused the 80% offer at that time and was in no hurry, as he had two years to file for arbitration with State Farm. The August 13, 1992, letter also stated that State Farm was in receipt of Country Companies' medical subrogation notice and that State Farm "will protect you at the time of settlement."

Discovery proceeded. Plaintiff and defendant exchanged requests for production and interrogatories and filed responses. Depositions were taken, and expenses of over $400 were incurred by plaintiff. Country Companies did not share in the work or in the cost. Billeaud made a demand for settlement through defendant's attorney in January 1993. Defendant's attorney then tendered an offer of $10,000 to settle the case, but that offer was refused. Finally, State Farm made a counteroffer of $12,000 with the stipulation that defendant be released from all liability in connection with plaintiff's claims against defendant, including the subrogation claim of Country Companies. Plaintiff was willing to accept the offer. On August 13, 1993, an order dismissing the complaint with prejudice was entered by stipulation of the parties. Country Companies refused to pay any attorney fees or any portion of the expenses in the case. Billeaud filed a motion to adjudicate attorney's lien since State Farm intended to issue a separate check to Country Companies in the amount of $3,820.37, the total medical subrogation claim. He received attorney fees and expenses only on that portion of the settlement which exceeded the $3,820.37 subrogation payment. Billeaud asked the court to determine whether he was entitled to one-third of the sum under the fund doctrine, plus a *pro rata* share of expenses. He acknowledged at a hearing on the matter that he was never retained or authorized by Country Companies to represent Country Companies' interests. The trial court denied Billeaud's motion, finding no reason why plaintiff's counsel

could not have filed suit on behalf of his client for damages without including the subrogation claim.

## II

The issue presented is whether the fund doctrine applies to the facts presented so as to justify reduction of the subrogation award to the medical-payment insurer, Country Companies, by one-third for attorney fees plus a *pro rata* amount of the insured's expenses. The trial court refused to apply the fund doctrine because of Country Companies' notice to plaintiff's attorney that it did not want his assistance but wanted instead to deal directly with State Farm on its medical subrogation claim. However, we believe the fund doctrine is applicable to the instant case.

■ The fund doctrine is based on the equitable concept that an attorney who performs services in creating a fund should in equity and good conscience be allowed compensation out of the whole fund from those who seek to benefit from the creation of the fund. (*Baier v. State Farm Insurance Co.* (1977), 66 Ill. 2d 119, 361 N.E.2d 1100.) In order to recover fees under the fund doctrine, the attorney must show (1) that the fund was created as the result of legal services performed by an attorney, (2) that the subrogee did not participate in the creation of the fund, and (3) that the subrogee benefited out of the fund that was created. (*Meyers v. Hablutzel* (1992), 236 Ill. App. 3d 705, 707, 603 N.E.2d 91, 93.) "When these conditions are shown to exist, then equity will apportion the fees and expenses incurred in creating the fund among those who benefit from its creation." (*Smith v. Marzolf* (1980), 81 Ill. App. 3d 59, 64, 400 N.E.2d 949, 953.) However, a plaintiff may not recover attorney fees under the doctrine while rendering services for an unwilling recipient. *Tenney v. American Family Mutual Insurance Co.* (1984), 128 Ill. App. 3d 121, 470 N.E.2d 6.

In the instant case, the trial court, citing *Tenney* and *Perez v. Kujawa* (1992), 234 Ill. App. 3d 957, 602 N.E.2d 38, found that because Country Companies notified plaintiff's attorney prior to plaintiff's attorney filing suit that Country Companies did not want plaintiff's attorney to collect its subrogation claim but intended to represent itself in the matter, Country Companies was an unwilling recipient of plaintiff's attorney's services and equity did not justify an award of attorney fees out of the subrogation lien. However, it has been said that *Tenney* is not to be interpreted "to preclude application of the fund doctrine whenever an insurer notifies its insured or an attorney representing its insured of its intention to pursue its own subrogation interests." (*Perez*, 234 Ill. App. 3d at 961-62, 602 N.E.2d at 41.) Instead, each case must be judged on its own unique facts.

■ Here, Country Companies made an express disclaimer of employment to plaintiff's attorney but later asked defendant's carrier, State Farm, to keep Country Companies' subrogation rights in mind when settling the claim with plaintiff's attorney. This shows that it was plaintiff's attorney who was involved in settlement negotiations with State Farm and plaintiff's attorney who created the $12,000 settlement fund. While Country Companies had some limited negotiations with State Farm, the record clearly indicates that Country Companies turned down State Farm's settlement offer of 80% of plaintiff's medical payments and let plaintiff's attorney proceed unassisted with discovery. Country Companies did not participate in depositions or assist in preparation of interrogatories. Additionally, Country Companies refused to file an arbitration claim with State Farm as part of the mandatory arbitration agreement in effect between the insurance companies. Country Companies' claims coordinator testified that the carrier did not intend to file an arbitration claim until the two-year statute of limitations period was near expiration. To allow Country Companies to rely on its arbitration agreement with State Farm to preclude application of the fund doctrine is to allow Country Companies a windfall to which it is not entitled.

This situation is similar to the circumstances presented in *Powell v. Inghram* (1983), 117 Ill. App. 3d 895, 453 N.E.2d 1163. In that case, the plaintiff signed a subrogation agreement with the defendant insurance company, requiring her to pay the insurer for any recovery received by judgment or settlement. The plaintiff's attorney filed suit several months before any correspondence with the insurance company, seeking the total amount of damages arising from the tort. Approximately 10 months later, the plaintiff submitted a claim to her insurance company for medical expenses. The insurer notified the plaintiff's attorney of its subrogation lien and disclaimed any intention of employing him to collect the lien. The insurer, however, requested the attorney to "protect [its] interests" in the event of a settlement. (*Powell*, 117 Ill. App. 3d at 896, 453 N.E.2d at 1164.) The *Powell* court determined that the insurance company's refusal to hire the plaintiff's attorney while seeking to benefit from his services was a "situation most suitable for the application of the fund doctrine." (*Powell*, 117 Ill. App. 3d at 900, 453 N.E.2d at 1166.) While there are differences between *Powell* and the instant case, such as the *Tenney* letter written in the instant case prior to the plaintiff's filing of suit and the absence of such a letter in *Powell*, basic to both is that the plaintiff's insurance company is seeking to benefit from the services of the plaintiff's attorney while doing nothing to assist the plaintiff's attorney in negotiations or in preparation for trial.

In the instant case, the trial court found: "[T]here is no reason plaintiff's counsel could not have filed suit on behalf of his client for damages without including the subrogation claim. In doing so, counsel for the plaintiff would not have jeopardized plaintiff's rights in any way." We, however, do not believe that plaintiff could have split the medical payments made by Country Companies from the rest of the damages without weakening plaintiff's case. Medical payments in such a suit indicate much more than the amount owed to doctors and hospitals. They tend to establish or lend credence to, *inter alia,* claims for pain and suffering and lost wages. We agree with plaintiff's attorney that the *Tenney* letter, along with Country Companies' refusal to arbitrate until absolutely essential and the letters to State Farm asking State Farm to protect Country Companies' subrogation rights, left plaintiff in an "unenviable position." Plaintiff's choices were to split his cause of action against the tortfeasor, to bear the entire cost of collection, and/or to wait out the two-year limitations period on the arbitration agreement between State Farm and Country Companies in order to bring Country Companies to settlement. By boxing the insured into such a position, Country Companies was not being fair to its own insured.

Country Companies points out that in Illinois there is no fiduciary relationship between an insurance company and an insured. (*Nielsen v. United Services Automobile Association* (1993), 244 Ill. App. 3d 658, 612 N.E.2d 526; *Overbey v. Illinois Farmers Insurance Co.* (1988), 170 Ill. App. 3d 594, 525 N.E.2d 1076.) However, in Illinois every insurer has an implied duty of good faith and fair dealing with respect to an insured. (*Robacki v. Allstate Insurance Co.* (1984), 127 Ill. App. 3d 294, 297, 468 N.E.2d 1251.) In the instant case Country Companies' refusal to arbitrate, combined with its refusal to assist plaintiff while at the same time asking State Farm to keep Country Companies' "subrogation rights in mind when settling with Mr. Brase," constitutes bad faith. For us to condone such behavior would require us to ignore both legal and equitable principles designed to place the ultimate responsibility for a loss upon the party on whom in good conscience it should fall. Here, State Farm never offered to pay Country Companies more than 80% of the medical payments made on plaintiff's behalf. To allow Country Companies 100% recovery without making it share in the cost of recovery would be inequitable. Accordingly, we believe the fund doctrine applies to the present facts so as to justify the reduction of the subrogation award to Country Companies by one-third for attorney fees plus a *pro rata* amount of expenses.

For the foregoing reasons, the judgment of the circuit court of

Madison County is reversed, and the cause is remanded with directions.

Reversed and remanded with directions.

LEWIS, P.J., and CHAPMAN, J., concur.